**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
FRANK MCQUILLAN,                    :
                                    :
                    Plaintiff,      :
                                    :   Civil Action No. 13-5773 (FLW)
            v.                      :
                                    :
PETCO ANIMAL SUPPLIES STORES,       :            **OPINION**
INC.; PETCO DISTRIBUTION            :
CENTE and JOHN DOES 1-5             :
AND 6-10,                           :
                                    :
                    Defendants.     :
_____ :

**WOLFSON, United States District Judge**:

Plaintiff Frank McQuillan ("Plaintiff"), a Caucasian male, files this seven-count Complaint against his former employer, defendant Petco Animal Supplies Stores, Inc. ("Defendant" or "Petco")[1], accusing Petco, inter alia, of discriminating against Plaintiff based on his race and disability in violations of the New Jersey Law Against Discrimination ("NJLAD"). In the instant matter, Defendant moves to dismiss Counts I – V, which are state law claims brought under the NJLAD. For the reasons set forth below, Defendant's motion is **GRANTED** in part and **DENIED** in part. Specifically, Defendant's motion to dismiss Counts I, II and III

---

[1] Plaintiff also names Petco Distribution Center as a defendant; however, according to Petco and not disputed by Plaintiff on this motion, Petco Distribution Center does not exist as a separate legal and/or employer entity.

is denied; Counts IV and V are dismissed without prejudice. However, Plaintiff shall be given leave to amend Counts IV and V. An amended complaint must be filed within two weeks from the date of the Order accompanying this Opinion.

## BACKGROUND

The Court recounts the following facts from the Complaint, and for the purposes of this motion, they are taken as true. In November 2012, Plaintiff was employed by Petco as an order picker at its distribution center located in Monroe, New Jersey. Plaintiff alleges that during his employment at Petco, he was the only "Caucasian" employee working on the floor of the facility. Compl., ¶ 9. And, the "vast majority" of the employees working were Hispanic. Id. at ¶ 10. Because he was Caucasian, Plaintiff alleges that he suffered employment discrimination from management and endured a hostile working environment. For example, Plaintiff complains that while he was working at the center, signs posted around the facility were regularly in Spanish with no English translation available. Id. at ¶ 11. Plaintiff further complains that he was referred to as a "gringo" or "maricon" by his co-workers on a daily basis and management took no corrective action to stop the harassment and discrimination.[2] Id. at ¶ 12. In fact, Plaintiff alleges that

---

[2] According to Plaintiff, the Spanish term "Gringo" is used to degrade foreigners, especially white Americans. "Maricon" is a

2

on one occasion, a manager, who is also Hispanic, remarked to Plaintiff, "not bad for a white boy." Id. at ¶ 16.

Plaintiff also alleges a specific instance of discriminatory conduct by management. According to Plaintiff, his position required the scanning and lifting of heavy pallets and "whereas all the other [Hispanic] employees were provided headsets to perform the scanning test, Plaintiff was required to do the same by hand." Id. at ¶ 18. When Plaintiff inquired why he was the only one not given a headset, Plaintiff alleges that management informed him that there was "no one available to train him" on using the scanners. Id. at ¶ 20. However, Plaintiff observed that Hispanic employees, who were hired after Plaintiff, readily received headsets to perform their work. Id. at ¶ 21. As a result of this treatment, Plaintiff avers that it took significantly longer time for him to perform tasks than his co-workers. Based on these incidents, Plaintiff accuses Petco of discriminating against him because of his "race/color/national origin/ancestry." Id. at ¶ 24. Moreover, Plaintiff claims that the work environment was such that "a reasonable Caucasian male in [Plaintiff's] circumstance would have found the work environment to have become hostile, intimidating, and/or abusive." Id. at ¶ 25.

On or about January 24, 2013, Plaintiff alleges that he

---

derogatory Spanish term used to refer to a homosexual.

3

suffered a torn rotator cuff while working. When Plaintiff reported this incident to management, Plaintiff's supervisor purportedly responded, "I don't want this on my shift! I can't have any injuries on my shift! Why don't you just go home and I'll pay you for the day. I don't want any injury reports on my shift." Id. at ¶ 31. Thereafter, Plaintiff sought medical treatment with Petco's medical provider, U.S. Healthworks. Id. at ¶ 33. Plaintiff alleges that he was informed by the doctor that Plaintiff could return to work if he were to be placed on light duty without using his right side. Id. at ¶ 34. However, when the doctor discussed Plaintiff's situation with management at Petco, the doctor was informed by Petco that it did not have any light duty available for Plaintiff. Id. at ¶ 35.

Subsequently, in February 2013, Plaintiff filed a claim for worker's compensation benefits due to his shoulder injuries. A day later, on February 27, 2013, Plaintiff alleges that a representative of Petco advised Plaintiff's workers' compensation counsel: "Just tell him he's fired." Id. at ¶ 39. Thereafter, Plaintiff initiated this lawsuit asserting the following seven causes of action against Defendant: Count I (hostile work environment in violation of NJLAD); Count II (failure to accommodate under NJLAD); Count III (failure to engage in the interactive process under NJLAD); Count IV (disability discrimination under NJLAD); Count V (perception of

4

disability discrimination under NJLAD); Count VI (common law wrongful discharge); and Count VII (request for equitable relief). In the instant matter, Defendant moves to dismiss Counts I – V for failure to state a claim.

## DISCUSSION

### I. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. The Court held that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965. In affirming that *Twombly* standards apply to all motions to dismiss, the Supreme Court has explained that principle. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948-49 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Therefore, "a court considering a motion to

5

dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1949. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Moreover, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiffs' claim. *Lum v. Bank of Am.,* 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." *Id.* That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." *Id.* (citations and quotations omitted).

**II. Hostile Work Environment under the NJLAD - Count I**

As a part of his hostile work environment claim, Plaintiff alleges that: (1) he was the only Caucasian employee working on

6

the floor of the Monroe facility; (2) the majority of the employees were Hispanic; (3) signs were posted in Spanish without an English translation; (4) on a daily basis, his co-workers referred to him as "gringo" and "maricon"; (4) on one occasion, a Hispanic manager, told him, "not bad for a white boy"; (5) he did not receive a headset to perform certain essential functions of his job, while all other Hispanic employees, including those hired after Plaintiff, received scanners; and (6) Plaintiff was assigned heavier pallets than non-Caucasian/Hispanic co-workers. In addition to its contention that Plaintiff has failed to sufficiently allege a *prima facie* case for hostile work environment, Defendant raises two preliminary issues: 1) whether Plaintiff's allegations wrongly equate the terms race/color/national origin/ancestry with the term Caucasian; and 2) whether Plaintiff's allegations satisfy the heightened standard for a reverse discrimination claim. The Court will first address these issues.

Plaintiff claims that he suffered a hostile work environment because he was Caucasian. Defendant takes issue with Plaintiff's usage of the word "Caucasian" because it does not fit within a particular race, color, national origin, and ancestry, which are separate and distinct forms of discrimination under the NJLAD. This argument can be summarily addressed. There is no doubt that having construed the

7

allegations, and drawing all favorable inferences therefrom, Plaintiff has alleged that he suffered discriminatory conduct by Defendant on the basis of his color – a white individual. Indeed, Plaintiff alleges that his co-workers constantly referred to him as a "gringo," a Spanish term sometimes used to demean a white American. See Compl., ¶ 13. Plaintiff accuses Defendant of condoning, and contributing to, this type of discriminatory behavior. In fact, Plaintiff claims that his supervisor had remarked on at least one occasion that Plaintiff was "not bad for a white boy." Id. at ¶ 16. Based on these allegations, Plaintiff makes it plain that these Hispanic supervisors and co-workers were treating him differently because he was white. Thus, I do not agree with Defendant's hypertechnical approach on this dismissal motion, and Plaintiff's claim will be construed as based upon color or race only. Next, I will proceed to consider the allegations relating to reverse discrimination.

Defendant further argues that Plaintiff failed to allege any facts that would satisfy the pleading requirements for a reverse discrimination claim. Indeed, as the New Jersey Supreme Court has long recognized, "New Jersey has a strong interest in maintaining 'discrimination-free workplace[s]' for workers." Cutler v. Dorn, 196 N.J. 419, 429-30 (2008) (citing Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 600 (1993)). In that regard,

8

the NJLAD makes it an unlawful "[f]or an employer, because of the race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, sex . . . of any individual, . . . to refuse to hire or employ or to bar or to discharge . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.J.S.A. 10:5-12(a).

Establishing a discrimination claim under the NJLAD involves the well-recognized burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Victor v. State, 203 N.J. 383, 408 (2010) (observing that "employment discrimination claims [under the NJLAD] proceed in accordance with the McDonnell Douglas burden-shifting paradigm"). However, the *prima facie* stage is slightly modified and heightened in a reverse discrimination context where, as here, the plaintiff is part of a majority group. This modified standard equally applies to assertions of color or race-based hostile work environment. Oakley v. Wianecki, 345 N.J. Super. 194, 201-02, (App. Div. 2001); Glavan v. City of Irvington, No. A-2211-06T2, 2008 N.J. Super. Unpub. LEXIS 3011, at *16 (App. Div. Jul. 25, 2008).

Under the NJLAD, claims of racial discrimination against white persons have been termed "reverse discrimination," and are

9

acknowledged to be atypical. Oakley, 345 N.J. Super. at 201. Generally, an employee alleging this type of discrimination is required to allege some reason to believe that his employer is the "unusual employer who discriminates against the majority." Erickson v. Marsh & McLennan Co., 117 N.J. 539, 551 (1990). To that end, a plaintiff must allege certain "background circumstances that support the suspicion that the defendant is that unusual employer who discriminates against the majority." Miller v. New Jersey, 144 Fed. Appx. 926, 929 (3d Cir. 2005); Murphy v. Hous. Auth. and Urban Redev. Agency, 32 F. Supp. 2d 753, 764-65 (D.N.J. 1999), aff'd, 208 F.3d 206 (3d Cir. 2000). The types of "background circumstances" which might support an inference of reverse discrimination fall into two categories: "(1) evidence indicating that the particular employer at issue has some reason or inclination to invidiously discriminate against the majority; and (2) evidence indicating that there is something 'fishy' about the facts of the case at hand that raises an inference of discrimination." Miller, 144 Fed. Appx. at 930 (quotations and citations omitted).

More specifically, to determine what constitutes an "unusual employer," the New Jersey Appellate Division in Bredt v. Johnson, No. A-0357-04T5, 2006 N.J. Super. Unpub. LEXIS 841 (App. Div. Apr. 13, 2006), weighed the following guiding factors: "1) the employer delegated to the supervisor the

10

authority to control the situation leading to the plaintiff's complaint; 2) the supervisor exercised that authority; 3) an [NJLAD] violation resulted; and 4) the authority delegated by the employer aided the supervisor in causing the injury of which the plaintiff complains." Id. at *17.  In discussing these factors, the appellate court acknowledged "the advent of more sophisticated and subtle forms of discrimination," which requires courts to "analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment in evaluating a hostile work environment claim." Id. at *16.

In addition to satisfying the pleading requirements for a reverse discrimination claim, Plaintiff must also allege the following elements to properly plead a cause of action for hostile work environment:

> (1) the conduct complained of would not have occurred but for the employee's protected trait (white Caucasian);
>
> (2) the conduct was severe or pervasive enough to make;
>
> (3) a reasonable person of the same protected trait believe that;
>
> (4) the conditions of employment and the working environment has been altered and the working environment has become hostile or abusive.

Lehmann, 132 N.J. at 606.

Here, Defendant contends that Plaintiff has not alleged that Petco is an "unusual employer" in the context of a reverse discrimination claim. I disagree. Plaintiff alleges that his supervisors were Hispanics, along with a majority of his co-workers. Plaintiff further alleges that the management supervised Plaintiff's day-to-day activities as an order picker at the Monroe facility. Plaintiff accuses those supervisors of engaging in discriminatory conduct by using certain untoward, race-related remarks against him, and by treating Plaintiff less favorably than his Hispanic counterparts. In his Complaint, Plaintiff paints a picture that -- due to his color -- he suffered harassment and discrimination in a predominately non-white work environment, which ultimately affected his job performance. On this motion to dismiss, I find that Plaintiff has sufficiently alleged that Defendant, through the actions of its employee supervisors, was an "unusual employer" for the purposes of satisfying the modified standard for a reverse discrimination claim.

Furthermore, I also find that Plaintiff has adequately pled the facts for a hostile work environment. While Defendant argues that each of Plaintiff's complaints, individually, relating to his work environment, is not sufficiently pervasive to create a hostile work place, taking those complaints as a whole, however, Plaintiff has alleged a causal connection of his

status as a white person and the ongoing harassment to which Plaintiff contends he was subjected at Pecto. Indeed, circumstances of hostile work environment include "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the] employee's work performance." Mandel v. M&Q Corp., 706 F.3d 157, 168 (3d Cir. 2013). Plaintiff's allegations fit within this framework. First, Plaintiff alleges that he was subjected daily to racial taunts by co-workers, which the management ignored, and that even Plaintiff's supervisor made racial remarks towards him. Moreover, Plaintiff avers that he was assigned to scan and lift heavier pallets without the assistance of a headset, while other non-white workers dealt with lighter pallets and used a scanner. As a result, Plaintiff complains that his job productivity suffered because it took significantly longer to perform his work tasks. Accordingly, the Court is satisfied that taking as true the totality of the alleged circumstances, the negative treatment of Plaintiff altered the conditions of Plaintiff's employment such that his workplace had become hostile or abusive. Accordingly, Defendant's motion to dismiss this claim is denied.

**III. Failure to Accommodate under the NJLAD – Counts II and III**

In Count II, Plaintiff alleges that Defendant discriminated

13

against him by failing to accommodate his disability, which disability resulted from a workplace injury. In Count III, Plaintiff alleges that Defendant failed to engage in the interactive process when he requested certain accommodations from Defendant. Because both counts relate to a claim for failure to accommodate under the NJLAD, the Court will analyze them together.

To begin, the requirements for a failure to accommodate claim under the NJLAD have been interpreted in accordance with its federal counterpart, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. Tynan v. Vicinage 13 of Superior Court, 351 N.J. Super. 385, 397 (App. Div. 2002); Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 246 n.12 (3d Cir. 2006). In order to sufficiently state a claim for failure to accommodate under the NJLAD, a plaintiff has to allege four elements: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated. Armstrong, 438 F.3d at 246; see Taylor v Phoenixville Sch. Dist., 184 F.3d 296, 317-320 (3d Cir. 1999); Tynan, 351 N.J. Super. at 400.

The NJLAD does not specifically address reasonable accommodation, but New Jersey courts have uniformly held that the law nevertheless requires an employer to reasonably

accommodate an employee's disability or handicap. See Viscik v. Fowler Equipment Co., 173 N.J. 1, 11 (2002); Bosshard v. Hackensack University Medical Center, 345 N.J. Super. 78, 91 (App. Div. 2001). An employer's duty to accommodate extends only so far as necessary to allow "a disabled employee to perform the essential functions of his job. It does not require acquiescence to the employee's every demand." Tynan, 351 N.J. Super. at 397 (quotations and citations omitted); Jones v. Aluminum Shapes, 339 N.J. Super. 412, 428 (App. Div. 2001); see 42 U.S.C. § 12111(9)(B) (establishing examples of reasonable accommodations including "job restructuring, part-time or modified work schedules, reassignment to a vacant position"). If an "employer reasonably determines that an employee because of handicap cannot presently perform the job even with an accommodation, then the employer need not attempt reasonable accommodation." Id.

It is not necessary that requests for reasonable accommodations be in writing or even use the phrase "reasonable accommodation." Taylor, 184 F.3d at 313 (quoting EEOC manual). "[A]n employer cannot expect an employee to read its mind and know that he or she must specifically say 'I want reasonable accommodation." Id. (quoting Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1286 (7th Cir.1996)). While there are no magic words to seek an accommodation, the employee, however,

15

"must make clear that . . . assistance [is desired] for his or her disability." Jones v. United Parcel Service, 214 F.3d 402, 408 (3d Cir.2000) (quoting Taylor, 184 F.3d at 313). Once such a request is made, "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Taylor, 184 F.3d at 312 (quoting Mengine v. Runyon, 114 F.3d 415, 419-20 (3d Cir. 1997)).

To determine the appropriate accommodation, the employer must initiate an informal interactive process with the employee. 29 C.F.R. § 1630.2(0)(3). This process must "identify the potential reasonable accommodations that could be adopted to overcome the employee's precise limitations resulting from the disability." Tynan, 351 N.J. Super. at 400. Importantly, once a disabled employee requests accommodations, it is the employer who must make the reasonable effort to determine the appropriate accommodations. Taylor, 184 F.3d at 311. In order to plead that an employer failed to participate in the interactive process, a disabled employee must allege: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. Id. at 319-20.

16

Here, Defendant does not dispute the first element of Plaintiff's *prima facie* case; that is, Plaintiff has sufficiently alleged that he was disabled under the NJLAD. Rather, Defendant argues that Plaintiff has failed to properly allege that Petco denied him a reasonable accommodation or that Petco did not engage in the interactive process. In support of his failure to accommodate claim, Plaintiff avers that he was injured during his shift at the Monroe facility, and subsequently, he was treated by Defendant's medical provider, U.S. Healthworks. Plaintiff claims that the doctor at U.S. Healthworks diagnosed Plaintiff with a torn rotator cuff, and the doctor advised Plaintiff that he could only return to work if he was placed on light duty without having to use his right side. Allegedly, the doctor contacted Defendant on Plaintiff's behalf regarding Plaintiff's medical situation and requested accommodations. Plaintiff maintains that the doctor was informed by Defendant that the Monore facility did not have any available light duty to accommodate Plaintiff. Based on these allegations, I find that Plaintiff has properly alleged a failure to accommodate claim.

First, Plaintiff has alleged that his employer was informed of Plaintiff's disability by his treating physician. Indeed, according to Plaintiff, the physician requested an accommodation on his behalf. Petco, however, as alleged, did

17

not make any effort, let alone a good faith effort, to discuss with Plaintiff whether any reasonable accommodations were appropriate. While Defendant argues that no reasonable accommodation could have allowed Plaintiff to perform the essential functions of his job, at this stage of the litigation, Plaintiff is entitled to discovery on that issue, particularly since Petco allegedly refused to engage in the interactive process. In other words, Defendant cannot purportedly, on one hand, deny Plaintiff's request for accommodations without engaging in the interactive process, and on the other hand, during litigation, assert that there are no accommodations available. See Armstrong, 438 F.3d at 247. To permit an employer to do so would effectively excuse Defendant from engaging in the interactive process – and such an assertion by Defendant is not appropriately credited on a motion to dismiss.

Accordingly, I find Plaintiff has sufficiently pled a failure to accommodate claim under the NJLAD.

**IV. Wrongful Discharge based on Disability Discrimination – Counts IV and V**

In order for a plaintiff to state a *prima facie* case of discriminatory discharge because of a handicap or disability, he must allege that: (1) he is disabled or perceived to have a disability; (2) the complainant had been performing his work at a level that met the employer's legitimate expectations; (3) he

18

was fired; and (4) the employer had sought another to perform the same work after complainant had been removed from the position. Maher v. New Jersey Transit Rail Operations, Inc., 125 N.J. 455, 481 (1991); Jansen v. Food Circus Supermarkets, 110 N.J. 363, 382 (1988); O'Brien v. IBM, No. 06-4864 (FLW), 2009 U.S. Dist. LEXIS 25358, at *59 (D.N.J. Mar. 27, 2009).

Defendant does not dispute, at this time, that Plaintiff has sufficiently alleged that he had a disability. Rather, Defendant argues that Plaintiff has failed to allege that he met Petco's performance expectations and has not alleged that Petco replaced him after his discharge. I disagree with Defendant's first contention that Plaintiff has not pled that he was performing his job satisfactorily. The Complaint at paragraph 6 plainly alleges that "[a]t all times herein, plaintiff performed up to and beyond the reasonable expectations of his employer." Compl., ¶ 6. This allegation is sufficient to meet the pleading requirements of the second element. However, what Plaintiff lacks is any factual allegations that Defendant hired another person to replace Plaintiff. Indeed, Plaintiff concedes this point in his briefing. See Plaintiff's Opposition, p. 13 ("Plaintiff concedes that he has not alleged that non-disabled individuals were retained."). Plaintiff argues, instead, that he need not allege every element of his wrongful discharge claim. Although Plaintiff is not expected to plead specific

19

data and information regarding Defendant's hiring practices, nonetheless, Plaintiff must allege, at the least, that Defendant sought to hire someone to replace Plaintiff after his discharge. Therefore, I find that Plaintiff has failed to properly allege a wrongful termination claim on the basis of his alleged disability. In that connection, Count V also fails to state a claim for the same reason why Plaintiff's claim of wrongful discharge on the basis of a disability is insufficiently pled. The dismissal of both Counts IV and V, however, is without prejudice.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is **GRANTED** in part, and **DENIED** in part. Specifically, Defendant's motion to dismiss Counts I, II and III are denied; However, Counts IV and V are dismissed without prejudice. Plaintiff shall be given leave to amend Counts IV and V. An amended complaint must be filed within two weeks from the date of the Order accompanying this Opinion.

DATED: April 28, 2014                    /s/     Freda L. Wolfson
                                         Freda L. Wolfson, U.S.D.J.